

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    -v-                           :     INDICTMENT

GUILLERMO D. CLAMENS,             :     09 CRIM 1001

        Defendant.            :

- - - - - - - - - - - - - - - - x

*Judge McMahon*

## COUNT ONE

(Conspiracy To Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

### Relevant Persons and Entities

1.  At all times relevant to this Indictment, GUILLERMO D. CLAMENS, the defendant, was the Chairman and at one time the Chief Executive Officer of FTC Capital Markets, Inc. ("FTC Capital Markets"), a Delaware company, and was President of FTC Emerging Markets, Inc. ("FTC Emerging Markets"), a company incorporated in the Republic of Panama.

2.  At all times relevant to this Indictment, FTC Capital Markets was a broker-dealer registered with the Securities and Exchange Commission ("SEC") pursuant to the Securities Exchange Act of 1934, a member of the New York Stock Exchange, Inc., and a member of the Financial Industry Regulatory Authority ("FINRA"). FTC Capital Markets' principal office was located on East 56th Street, New York, New York, and it had a branch office in Miami, Florida. FTC Capital Markets' largest

shareholder was FTC Holdings, LLC ("FTC Holdings"), a Delaware Limited Liability Company that is owned and controlled by GUILLERMO D. CLAMENS, the defendant.

3. At all times relevant to this Indictment, FTC Emerging Markets, which is controlled by GUILLERMO D. CLAMENS, the defendant, was not registered with the SEC or FINRA.

### The Scheme To Defraud

4. From at least in or about January 2008, through in or about November 2008, GUILLERMO D. CLAMENS, the defendant, and others known and unknown, solicited funds from institutional investors promising to invest their money in safe, low-risk securities, made repeated misrepresentations that their funds had been so invested, and sent fictitious account statements representing that such investments had been made. In truth and in fact, CLAMENS did not invest the investors' funds as promised, but rather used and misappropriated the funds in order to make unauthorized purchases of high risk securities, including bonds issued by an affiliate of FTC Capital Markets.

5. In or about January 2008, FTC Capital Markets entered into an agreement with the broker-dealer subsidiary of a large international bank (the "Clearing Broker"), pursuant to which the Clearing Broker agreed to provide certain back-office (or "clearing") functions for securities customers of FTC Capital Markets, which acted as an "introducing broker." Pursuant to

that agreement, the Clearing Broker agreed, in substance, to carry customer accounts introduced by FTC Capital Markets to the Clearing Broker, to execute and clear transactions for such accounts, to perform various cashiering functions for such accounts, and prepare and mail confirmations and monthly account statements to the customers introduced by FTC Capital Markets.

      6.   In or about April 2008, two institutional investors, which were related companies ("Victim 1" and "Victim 2," collectively, the "Victims"), opened non-discretionary investment accounts for which GUILLERMO D. CLAMENS, the defendant, was the broker. Each of the Victims advised CLAMENS that their investment objectives were to invest in short-term, safe investments, which would be consistent with the objective of maintaining adequate liquidity to meet the Victims' short-term cash flow requirements. CLAMENS represented that he could offer to the Victims short term Certificates of Deposit ("CDs") issued by a large international bank.

      7.   In or about April 2008, each of the Victims executed account opening forms prepared by the Clearing Broker for non-discretionary investment accounts, and sent the forms to a co-conspirator not named herein ("CC-1"), who then forwarded the forms to the Clearing Broker. Shortly thereafter, on or about April 23, 2008, Victim 1 transferred by wire $100 million and Victim 2 transferred by wire $10 million to their respective

investment accounts with the Clearing Broker, for which GUILLERMO D. CLAMENS, the defendant, was the broker. On or about the same day, CC-1 sent an email to representatives of the Victims, with a copy to CLAMENS, offering for sale CDs and money market funds issued by a large international bank. Also on or about the same day, the Victims responded by email to CLAMENS and CC-1, instructing them to invest all of the Victims' funds in one of the CDs that CLAMENS and CC-1 had offered for sale.

8.  On or about June 5, 2008, CC-1, acting at the direction of GUILLERMO D. CLAMENS, the defendant, emailed the representatives of the Victims fictitious monthly account statements that purported to show that the CDs the Victims had instructed CLAMENS and CC-1 to purchase on or about April 23, 2008 had been purchased on that date.

9.  Throughout the period that the investment accounts were held by the Victims, GUILLERMO D. CLAMENS, the defendant, and CC-1 repeatedly made false representations to the Victims that their funds were invested in CDs or money market funds issued by a major international bank in accordance with the Victims' instructions. For example, on or about May 6, 2008, CC-1 advised Victim 1 in an email, copying CLAMENS, that a $100 million CD purchased by Victim 1 on April 29, 2008 was due to redeem on May 6, 2008. In addition, on or about the same day, Victim 1 transferred by wire another $150 million to its

investment account controlled by CLAMENS. Representatives of Victim 1 instructed CC-1 via email to "re-invest the 100 [million dollar CD] and interest in [a 7-day CD at a rate of] 3.22%" and to invest the new funds of $150 million "in a separate [7-day CD at a rate of] 3.22%." Thereafter, on or about May 6, 2008, CC-1 responded with an email to the Victims, on which CLAMENS was copied, stating that "the funds have been received in the account and the investment and reinvestment have been executed."

10. Similarly, on or about September 8, 2008, a representative of the Victims sent an email to GUILLERMO D. CLAMENS, the defendant, and CC-1 stating: "Please invest 100 [million] into the cd that was talked about today for 2.80 till [September 19, 2008]." In response, on or about September 8, 2008, CC-1 sent an email to the representatives of the Victims, with a copy to CLAMENS, falsely stating that the "investment [sic] have been executed, according to your instructions."

11. On the basis of these and other false representations made to the Victims by GUILLERMO D. CLAMENS, the defendant, and CC-1, the Victims transferred by wire a combined total of over $1.5 billion into their investment accounts for which CLAMENS was the broker.

12. In fact, and as GUILLERMO D. CLAMENS, the defendant, well knew, the Victims' money was not invested in the CDs or money market funds of a large international bank as

CLAMENS had represented. Rather, from the beginning of the opening of the Victims' investment accounts, CLAMENS invested the Victims' money in high-risk securities, including bonds issued by an affiliate of FTC Capital Markets, without the Victims' knowledge or authorization.

13. For example, on or about April 24, 2008, just a day after GUILLERMO D. CLAMENS, the defendant, and CC-1 had received the Victims' instructions to invest their funds in the CDs of an international bank as described in paragraph 7 above, CC-1, acting at the direction of CLAMENS, sent an email to the Clearing Broker confirming the purchase of $10 million worth of bonds issued by an affiliate of FTC Capital Markets and $9,380,555.56 worth of Republic of Venezuela bonds in Victim 1's investment account. The next day, on or about April 25, 2008, the Clearing Broker provided to CC-1 a confirmation that these securities had been purchased in Victim 1's account.

14. Similarly, on or about August 21, 2008, GUILLERMO D. CLAMENS, the defendant, caused the investment accounts of the Victims each to purchase $25 million worth of bonds issued by an affiliate of FTC Capital Markets from a brokerage account in the name of FTC Emerging Markets, without the Victims' knowledge or authorization. The $50 million in cash in the Victims' accounts that was used to purchase these FTC-related party notes was transferred on or about August 21, 2008 from the Victims'

investment accounts through another financial institution to a bank account held by FTC Emerging Markets, which was controlled by CLAMENS.

15. To conceal this unauthorized trading activity, CC-1, acting at the direction of GUILLERMO D. CLAMENS, the defendant, sent to the Victims via email copies of what purported to be monthly account statements for the Victims' accounts. CC-1 also sent via email, with a copy to CLAMENS, reports entitled "Leverage Trades Finance Report," which were provided to the Victims on an almost daily basis. However, these monthly account statements and "daily" reports failed to reflect the unauthorized trading activity described in paragraphs 13 and 14 above. Instead, they purported to reflect the purchases of CDs and money market funds of a large international bank which CLAMENS and CC-1 falsely told the Victims they had purchased for the Victims in their accounts.

16. On or about October 30, 2008, Victim 2 requested a withdrawal of $41.5 million from its investment account, believing that sufficient cash existed in its account based on the false representations of GUILLERMO D. CLAMENS, the defendant, and CC-1. Unbeknownst to Victim 2, however, its investment account had almost no cash, but instead held over $60 million in bonds issued by an affiliate of FTC Capital Markets. In order to meet the withdrawal demand, in a telephone conversation on or

about October 30, 2008, CLAMENS directed CC-1, in substance, to sell 42 million of the FTC-related party bonds held in Victim 2's account to Victim 1's account. Later that day, CC-1 reported to CLAMENS that the trade had been booked. When Victim 2 inquired as to the delay in receiving its funds as requested, CC-1 falsely represented in an email to Victim 2, with a copy to CLAMENS, that the $41.5 million wire had been "returned at the FED" the night before due to "[i]nvalid wire instructions." CC-1 additionally asked Victim 2 to resend the written request for the withdrawal. In truth and in fact, however, CC-1 did not forward the original withdrawal request for the $41.5 million to the Clearing Broker until the next day, on or about October 31, 2008.

17.  On or about October 31, 2008, Victim 1 requested a withdrawal of $21.6 million from its investment account, believing that sufficient cash existed in its account based on the false representations of GUILLERMO D. CLAMENS, the defendant, and CC-1. Unbeknownst to Victim 1, as a result of the trade that CLAMENS orchestrated the day before between Victim 1's and Victim 2's accounts, Victim 1's account did not have enough cash to satisfy the withdrawal request. Ultimately, because CLAMENS was unable to liquidate the FTC-related party bonds in Victim 1's account, the $21.6 million was never delivered to Victim 1.

18. Moreover, in an attempt to conceal the unauthorized trading activity in Victim 1's account for as long as possible, GUILLERMO D. CLAMENS, the defendant, made a number of false representations to Victim 1 in response to its demands for its money, including the following: (i) CLAMENS told Victim 1 that he was meeting with the Clearing Broker to arrange for the transfer; (ii) CLAMENS told Victim 1 that the Clearing Broker needed the telephone number for Victim 1's banking contact in order to effect the transfer; (iii) CLAMENS told Victim 1 that the funds were being transferred to Victim 1; and (iv) CLAMENS told Victim 1 that the Clearing Broker and FTC Capital Markets would compensate Victim 1 for the delay in transferring the funds. In truth, CLAMENS was not discussing Victim 1's request for $21.6 million with the Clearing Broker at the time he made these statements to representatives of Victim 1, and the Clearing Broker had not agreed to compensate Victim 1 for the delay.

### Statutory Allegations

19. From at least in or about January 2008 through in or about November 2008, in the Southern District of New York and elsewhere, GUILLERMO D. CLAMENS, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (1) securities fraud, in violation of Title 15, United States Code, Sections

78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and (2) wire fraud, in violation of Title 18, United States Code, Section 1343.

20. It was a part and object of the conspiracy that GUILLERMO D. CLAMENS, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing devices, schemes and artifices to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

21. It was further a part and object of the conspiracy that GUILLERMO D. CLAMENS, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for

obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and televison communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

<u>Means And Methods Of The Conspiracy</u>

22.  Among the means and methods by which GUILLERMO D. CLAMENS, the defendant, and his co-conspirators would and did carry out the conspiracy were the following:

a.  CLAMENS made and caused to be made false representations about the securities he had purchased in investors' accounts.

b.  CLAMENS made and caused to be made unauthorized trades in investors' accounts.

c.  CLAMENS directed and approved the sending of fictitious account statements to investors so as to conceal his unauthorized trading.

d.  CLAMENS misappropriated money wired by investors to accounts controlled by CLAMENS and used it for his own purposes.

e.  CLAMENS and his co-conspirators used facilities of interstate and foreign commerce in furtherance of the objects of the conspiracy.

Overt Act

23. In furtherance of the conspiracy and to effect its illegal objects, GUILLERMO D. CLAMENS, the defendant, committed the following overt act, among others, in the Southern District of New York and elsewhere:

a.  On or about August 21, 2008, CLAMENS caused the investment accounts of Victim 1 and Victim 2 to purchase from an account in the name of FTC Emerging Markets at a financial institution in New York, New York, $50 million in bonds issued by an affiliate of FTC Capital Markets, without the investors' knowledge or authorization.

(Title 18, United States Code, Section 371.)

**COUNT TWO**

**(Securities Fraud)**

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 18 above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

25. From at least in or about January 2008 through in or about November 2008, in the Southern District of New York and elsewhere, GUILLERMO D. CLAMENS, the defendant, unlawfully,

willfully, and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, to wit, CLAMENS made or caused to be made false representations to investors regarding their investments, and omitted to disclose material facts to investors regarding their use and misappropriation of investor funds.

  (Title 15, United States Code, Sections 78j(b) & 78ff;
  Title 17, Code of Federal Regulations, Section 240.10b-5;
    and Title 18, United States Code, Section 2.)

## COUNT THREE

## (Wire Fraud)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 18 above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

27. From at least in or about January 2008 through in or about November 2008, in the Southern District of New York and elsewhere, GUILLERMO D. CLAMENS, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CLAMENS caused an investor to send on or about April 23, 2008 $100 million by interstate wire to a brokerage account in New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

28. As the result of committing the securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

Section 240.10b-5, alleged in Counts One and Two of this Indictment and the wire fraud offenses, in violation of Title 18, United States Code, Section 1343, alleged in Counts One and Three of this Indictment, GUILLERMO D. CLAMENS, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud and wire fraud offenses, including, but not limited to, the following:

    a.    At least approximately $1.5 billion in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the charged securities fraud and wire fraud offenses.

<u>Substitute Asset Provision</u>

    29.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Section 981(a)(1)(C);
        Title 21, United States Code, Section 853(p);
     and Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

GUILLERMO D. CLAMENS,

Defendant.

<u>INDICTMENT</u>

09 Cr. ___

(18 U.S.C. §§ 371, 1343, 2, and
15 U.S.C. §§ 78j(b) and 78ff.)

<u>PREET BHARARA</u>
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

10/20/09 Filed Indictment. A/W issued. Case assigned to J. McMahon.

Gurenstein
U.S.M.J.